TODD BROWN, GINGER BROWN, INDIVIDUALLY AND AS NEXT FRIENDS TO MACKAYLA BROWN AND GRACIE BROWN, MINOR CHILDREN; ERIC RITTER, INDIVIDUALLY AND AS NEXT FRIEND TO CURT RITTER, MINOR CHILD; WAYNE COBLE, HEATHER COBLE, INDIVIDUALLY AND AS NEXT FRIENDS TO MEGAN COBLE AND HOLLY COBLE, MINOR CHILDREN; DARIN KIDD, CATHY KIDD, INDIVIDUALLY AND AS NEXT FRIENDS TO WILLIAM JOSEPH KIDD AND DAVID KIDD, MINOR CHILDREN; TERRY CURTIS BARBERY, SHERRY BROWN BARBERY, INDIVIDUALLY AND AS NEXT FRIENDS TO BRYANT ANDREW BARBERY AND TORRY SHEREE BARBERY, MINOR CHILDREN; BRYAN JOHNSON, KIMBERLY JOHNSON, INDIVIDUALLY AND AS NEXT FRIENDS TO MICHAEL JOHN ROBINSON AND BRYAN HUNTER JOHNSON, MINOR CHILDREN; DONALD SHELTON, GLORIA SHELTON, INDIVIDUALLY AND AS NEXT FRIENDS TO BUDDY BAKER, MINOR CHILD; ELIZABETH CHRISCO, INDIVIDUALLY AND AS NEXT FRIEND TO FRANK CHRISCO AND TONY CHRISCO, MINOR CHILDREN; WALTER H. JONES, JR., LISA C. JONES, INDIVIDUALLY AND AS NEXT FRIENDS TO CASEY JONES, CHASE JONES, AND CORY JONES, MINOR CHILDREN; DANNY OLDHAM, PAULA OLDHAM, INDIVIDUALLY AND AS NEXT FRIENDS TO DALTON KEITH OLDHAM, MINOR CHILD; SHAWN CULBERSON, DEANNA CULBERSON, INDIVIDUALLY AND AS NEXT FRIENDS TO JORDAN CULBERSON, ALLIE GRACE CULBERSON, AND MAGGIE CULBERSON, MINOR CHILDREN; KEITH SUITS, DARLENE SUITS, INDIVIDUALLY AND AS NEXT FRIENDS TO DALTON SUITS AND RILEY SUITS, MINOR CHILDREN, MARK BRADY, JENNIFER DENISE BRADY, INDIVIDUALLY AND AS NEXT FRIENDS TO SAMANTHA BRADY AND LAUREN BRADY, MINOR CHILDREN; BRAD MOODY, JENNIFER MOODY; PAUL POWERS, TAMMY TYSINGER, INDIVIDUALLY AND AS NEXT FRIENDS TO DYLAN POWERS, MINOR CHILD; WILLIAM E. BRADY, DEBORAH BRADY, INDIVIDUALLY AND AS NEXT FRIENDS TO LANDON BRADY, MINOR CHILD; AND SIMILARLY SITUATED CURRENT STUDENTS OR POTENTIAL SCHOOL AGE STUDENTS RESIDING ON THE RANDOLPH COUNTY SIDE OF THE BENNETT SCHOOL ATTENDANCE ZONE AS DEFINED BY S.B. 233 OF THE SESSIONS LAWS OF 1979, PLAINTIFFS v. CHATHAM COUNTY BOARD OF EDUCATION AND SUPERINTENDENT ANN HART, IN HER OFFICIAL CAPACITY, DEFENDANTS

No. COA06-1577

(Filed 20 November 2007)

**1. Schools and Education— consolidated school district— agreement between counties—nullification by state law**

A 1931 agreement between two counties that created a consolidated school district for students living in both counties was nullified when the General Assembly established a general and uniform system of schools by its enactment of N.C.G.S. § 115-352(1943).

**2. Schools and Education— attendance in another county— prerequisites**

Under North Carolina law, students residing in Randolph County have no right to attend schools located in Chatham County without release from Randolph County, acceptance by Chatham County, and payment of a tuition charged at the discre-

BROWN v. CHATHAM CTY. BD. OF EDUC.

[187 N.C. App. 274 (2007)]

tion of the Chatham County Board of Education. N.C.G.S. §§ 115C-366(a) and (b); N.C.G.S. § 115C-366.1.

Appeal by plaintiffs from order entered 28 June 2006 by Judge Carl R. Fox in Superior Court, Chatham County. Heard in the Court of Appeals 21 August 2007.

*Stacey B. Bawtinhimer, for plaintiffs-appellants.*

*Tharrington Smith, L.L.P., by Kenneth A. Soo and Christine T. Scheef, for defendants-appellees.*

WYNN, Judge.

Under North Carolina law, students residing in one county may attend the public schools of another county only if they are released by their home school board, accepted by the other school board, and pay whatever tuition is required by that school board for out-of-county students.[1] Here, the plaintiffs, who reside in Randolph County, contend their children should be allowed to attend schools close to their homes but located in neighboring Chatham County without paying tuition, because a 1931 agreement allegedly created a consolidated school district between the counties. Because the General Assembly nullified the existence of the consolidated district when it established a general and uniform system of schools, we affirm the trial court's order of summary judgment.

Plaintiffs are a group of parents and their minor children who live in the so-called "Bennett Attendance Zone," an area around the Town of Bennett that is comprised of property in Randolph and Chatham Counties. Despite their residence in Randolph County, the minor children either have attended, currently attend, or plan to attend the Bennett School, which is physically located in Chatham County. This practice of allowing Randolph County children who also reside in Bennett to attend the Bennett School has been in place since 1931, when the Chatham and Randolph County School Boards agreed—with the approval of county commissioners, the State Board of Education, and the State Equalization Board—to consolidate their schools and establish a single school in Bennett for children from both counties. However, on 12 December 2005, the Chatham County School Board issued a policy to have any "out-of-county" students pay $500.00 in tuition to continue to attend Chatham County schools, including the Bennett School.

---

1. N.C. Gen. Stat. §§ 115C-366(a),(d), 115C-366.1 (2005).

In response to this policy, Plaintiffs filed a complaint on 11 January 2006 against Defendants Chatham County Board of Education and Superintendent of Schools Ann Hart in her official capacity, seeking a declaratory judgment striking down the policy. Plaintiffs also sought preliminary and permanent injunctions prohibiting the imposition of a tuition fee or any limitation on attendance of the Bennett School by Randolph County students living in the Bennett Attendance Zone. Defendants responded by filing a motion for summary judgment, which the trial court granted on 28 June 2006, finding that Defendants were entitled to judgment as a matter of law.

Plaintiffs appeal from that judgment, arguing that (I) questions of material fact remain as to whether the Bennett Attendance Zone was still in existence after the passage of N.C. Gen. Stat. § 115-352 (1943); and (II) Randolph County students who reside in the Bennett Attendance Zone are entitled as a matter of law to attend the Bennett School without being subject to a tuition fee or capacity limitation.

I.

**[1]** Plaintiffs first contend that questions of material fact remain as to whether the Bennett Attendance Zone was still in existence after the passage of N.C. Gen. Stat. § 115-352 (1943), such that summary judgment was not properly granted by the trial court. We disagree.

In 1933, the General Assembly passed legislation that abolished "[a]ll school districts, special tax, special charter or otherwise, as now constituted for school administration or for tax levying purposes" and designated counties as the administrative units for schools in North Carolina, except for in cities. N.C. Gen. Stat. § 115-562(4) (1933). Ten years later, another statute was enacted that provided that "all school districts, special tax, special charter, or otherwise, as constituted on May 15, 1933, are hereby declared non-existent as of that date[.]" N.C. Gen. Stat. § 115-352 (1943). This legislation was passed as the State moved to establish a general and uniform system of schools, based on county administrative units and overseen by a state agency.

Also in 1943, the General Assembly directed that "[s]chool districts may be formed out of portions of contiguous counties by agreement of the county boards of education of the respective counties subject to the approval of the state board of education." *Id.* § 115-198. However, if such a district was formed, "the pro rata part of the public school money due for teaching the children residing in one county shall be apportioned by the county board of education of that county, and paid to the treasurer of the other county in which the school-

house is located[.]" *Id.* Although Plaintiffs assigned error to the trial court's finding that simply restates that portion of the statute, they offered no proof of an agreement subsequent to the 1931 agreement between the Randolph and Chatham County School Boards, nor of approval by the state board of education of any such agreement. Furthermore, Plaintiffs have not shown that Randolph County ever paid Chatham County a pro rata share of public school money, as required by the statute if such a school district was officially formed. Plaintiffs' sole offer of "evidence" as to the ongoing existence of the Bennett Attendance Zone consists of the customary practices of the two school boards, rather than any legally binding documents or formally recognized agreements.

Moreover, in 1979, the General Assembly ratified a bill entitled, "An Act to require the Randolph County Board of Education to release and the Chatham Board of Education to accept certain pupils in the Bennett Attendance Zone." 1979 N.C. Sess. Laws Ch. 793. The law described the Bennett Attendance Zone and directed Randolph County to release from attendance "those students who are presently attending the Chatham County Schools, who reside" in the Bennett Attendance Zone, and who request such release. *Id.* Chatham County was then directed to accept such pupils for attendance. *Id.* According to legislative history documents included in the record before us, the language "those students who are presently attending . . . who reside [in the Bennett Attendance Zone" was. changed from an earlier version of the bill, which had referenced "all pupils residing within the [Bennett Attendance Zone]." In a finding of fact unchallenged on appeal, the trial court found that this legislation was introduced and passed in response to the Randolph County Board of Education's refusal in the 1960s and 1970s to release Randolph County students living in the Bennett Attendance Zone to attend schools in Chatham County. *See Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").

We are unpersuaded by Plaintiffs' contention that the 1933 and 1943 legislation had no effect on the Bennett Attendance Zone and the agreement between Randolph and Chatham Counties. Indeed, as found by the trial court and unchallenged by Plaintiffs in their appeal:

> The General Assembly in enacting the [1979] law thus recognized the Bennett Attendance Zone students as students required to

request release from Randolph County Schools and acceptance by Chatham County schools and did not view those students as residents or domiciliaries of the Chatham County school administrative unit or a Chatham County Schools district entitled to attend the Chatham County schools.

We note, too, that when construing the meaning of a statute, we must "ascertain the legislative intent to assure that the purpose and intent of the legislation are carried out." *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993) (citation omitted). The first step in that process requires us to look to the statutory language to determine if its meaning is plain and clear. *Id.* Moreover, the rules of statutory construction direct us to give "significance and effect" to "every part of the act, including every section, paragraph, sentence or clause, phrase, and word." *Hall v. Simmons*, 329 N.C. 779, 784, 407 S.E.2d 816, 818 (1991) (quotation and citation omitted).

The language of the 1979 bill could not be any plainer in terms of its intent to compel Randolph County to release students residing in the Bennett Attendance Zone and "presently attending" school in Chatham County, and likewise to require Chatham County to accept them as pupils. The 1979 legislation would have no force or effect were we to accept Plaintiffs' position that the Bennett Attendance Zone was still in existence as a "school district" following the 1933 and 1943 legislation. Likewise, as found by the trial court and unchallenged on appeal, students residing in the Bennett Attendance Zone have been required to pay a small tuition to Chatham County for a number of years without objection; Plaintiffs' position is only asserted now that the amount of the tuition has risen dramatically as Chatham County seeks to limit the number of out-of-county students.

Accordingly, we find that no genuine issue of material fact remains as to the question of whether the Bennett Attendance Zone is still in existence. *See Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998) (citation omitted) (summary judgment is properly granted when the evidence, viewed in the light most favorable to the non-moving party, shows no genuine issue of material fact). This assignment of error is without merit.

## II.

[2] Plaintiffs also argue that Randolph County students who reside in the Bennett Attendance Zone are entitled as a matter of law to attend Bennett Elementary School without being subject to a tuition fee or capacity limitation. We disagree.

KNOX v. UNIVERSITY HEALTH SYS. OF E. CAROLINA, INC.

[187 N.C. App. 279 (2007)]

Under North Carolina law, only students domiciled in a school administrative unit are entitled to attend the unit's public schools. N.C. Gen. Stat. § 115C-366(a) (2005). If students domiciled in one county wish to attend the public schools of another county, they must be released by their home school board and accepted by the school board where they wish to attend. *Id.* § 115C-366(d). The county is permitted to charge tuition for these out-of-county students. *Id.* § 115C-366.1 (2005).

Under the plain meaning of these statutory provisions, students residing in Randolph County have no right to attend schools located in Chatham County without release from Randolph County, acceptance by Chatham County, and a tuition charged at the discretion of the Chatham County School Board. Plaintiffs have failed to show that the Bennett Attendance Zone is still in existence under the law; moreover, none of the Plaintiffs-students fall under the definition of the 1979 legislation for purposes of requiring Chatham County schools to allow them to attend. These assignments of error are without merit.

Affirmed.

Judges HUNTER and BRYANT concur.